### STATE OF CONNECTICUT *v.* TERRENCE BOYD
### (13514)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued November 2, 1989—decision released March 6, 1990

---

*John F. Kavanewsky, Jr.,* for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, *David I. Cohen,* assistant state's attorney, and *Eric M. Higgins,* legal intern, for the appellee (state).

GLASS, J. The defendant, Terrence Boyd, was charged in a substitute information with the crimes of felony murder in violation of General Statutes § 53a-54c,[1] burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), larceny in the third degree in violation of General Statutes §§ 53a-119 and 53a-124 (a) (1) and larceny in the first degree in violation of General Statutes §§ 53a-119 and 53a-122 (a) (3). All of the charges stemmed from the murder of Ann Viner during the burglary of her home in New Canaan,

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

on December 10, 1986. After a trial to a jury of twelve, the defendant was found guilty on all of the charges except larceny in the first degree. On January 21, 1988, the defendant was sentenced to an effective prison term of forty-five years.

The defendant's principal argument on appeal is that the trial court erred in finding probable cause to prosecute him for felony murder. Specifically, at a joint probable cause hearing, the state offered evidence against the defendant and his codefendant, Tyrone Wilson.[2] Neither the defendant nor Wilson took the stand and, in effect, the only evidence offered by the state implicating the defendant in Ann Viner's murder was a written statement made by Wilson.[3] In particular, Wilson claimed in his statement that, while both he and the defendant participated in the burglary of the Viner residence, it was the defendant who killed Ann Viner.

The defendant contends that the trial court improperly admitted Wilson's statement for the following reasons: (1) the statement was hearsay and did not come under any recognized exception to the hearsay rule; and (2) admission of the statement violated his right to confrontation under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. Thus, the defendant asserts, and

[2] Wilson entered into a plea agreement with the state, agreeing to a sentence of twenty years. The defendant, therefore, was tried alone.

[3] At the probable cause hearing, the state called only three witnesses. The first was Officer David Heitz of the New Canaan police department. Heitz had responded to the Viner residence on December 10, 1986, and testified as to what he observed at the crime scene. The second was Patrick Shanley, a friend of both Wilson and Boyd, who testified that he had been with the two men earlier in the day, and that later in the day he saw Wilson walking along the side of a road in the vicinity of the Viner residence. The third and final witness was Lieutenant Gene Ready of the New Canaan police department, who testified that he took a written statement from Wilson on the day of his arrest. The state then introduced Wilson's statement into evidence.

the state concedes, that without Wilson's statement, there was insufficient evidence offered by the state to find probable cause to prosecute the defendant for felony murder.

In assessing the defendant's claim, we must undertake several levels of inquiry. First, because the defendant received a fair trial,[4] we must resolve the question of whether appellate review of the trial court's probable cause determination is warranted in this case. If so, we must then determine whether the trial court erred in admitting Wilson's statement at the probable cause hearing.

I

Article first, § 8, of the Connecticut constitution, as amended, provides in part that "[n]o person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law." In State v. Mitchell, 200 Conn. 323, 331, 512 A.2d 140 (1986), we held that "appellate review of the determination of probable cause is essential to fulfilling the purpose of [article first, § 8]." Furthermore, we stated that "an invalid finding of probable cause at such a hearing undermines the court's power to hear the case at trial." Id., 332.

Moreover, in Mitchell, we held that the standard for determining whether probable cause exists is " 'whether the government's evidence would warrant a person of

---

[4] The defendant's only claim of error regarding his trial, at which both he and Wilson testified, is that the trial court erred in admitting Wilson's statement as a prior consistent statement. After review of this claim, we conclude, however, that even if the trial court erroneously admitted Wilson's statement, the defendant has not met his burden of showing that the error was harmful. See State v. Brown, 187 Conn. 602, 611, 447 A.2d 734 (1982). Therefore, we conclude that the defendant received a fair trial.

reasonable caution to believe that the accused [had] committed the crime.'" Id., 336. We further noted that, when a defendant claims the evidence presented by the state was insufficient to meet this standard, "we must examine the evidence presented at the preliminary hearing to determine whether it was sufficient to support the trial court's finding of probable cause." Id., 335. In our recent decision of *State* v. *McPhail,* 213 Conn. 161, 170, 567 A.2d 812 (1989), we reaffirmed this principle, stating: "[I]mplicit in our decision [in *Mitchell*] was an understanding that, at the very least, insufficiency of the evidence presented at the probable cause hearing will deprive the trial court of jurisdiction over the person of the defendant, thus rendering moot any subsequent prosecution and conviction."

Therefore, even though the defendant received a fair trial, appellate review of his claim that the state presented insufficient evidence to establish probable cause to prosecute him for felony murder is mandated.

## II

The defendant's first ground for claiming that the trial court erred in admitting Wilson's statement is that the statement is hearsay and does not fall under any recognized exception to the hearsay rule.[5] General Stat-

---

[5] The defendant raised this objection before the trial court. In particular, when the state offered Wilson's statement into evidence, the following colloquy occurred among counsel and the court:

"Mr. Imhoff [Counsel for Boyd]: I'm going to object to it, Your Honor.

"The Court: On what grounds?

"Mr. Imhoff: Well it's hearsay, Your Honor, and it doesn't come within any of the exceptions to the hearsay [rule].

\* \* \*

"Mr. Cohen [Counsel for the state]: It's a statement against penal interest. It's perfectly good evidence.

"The Court: Yes. . . . The objections are overruled and it may be admitted."

utes § 54-46a (b),[6] the implementing legislation for article first, § 8, states that at a probable cause hearing "[t]he court shall be confined to the rules of evidence."[7] The state concedes that Wilson's statement is hearsay, but argues that it is admissible as a third party statement against penal interest or, alternatively, is admissible under the catch-all exception to the hearsay rule.

[6] "[General Statutes] Sec. 54-46a. PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

[7] With the exception of certain matters not pertinent to this appeal.

"In *State* v. *DeFreitas,* [179 Conn. 431, 450, 426 A.2d 799 (1980)], we adopted a rule, consistent with *Chambers* v. *Mississippi,* [410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed 2d 297 (1973)], and in accord with rule 804 (b) (3) of the Federal Rules of Evidence,[8] which provides that trustworthy third party statements against penal interest which are exculpatory to the defendant are admissible if the declarant is unavailable." *State* v. *Bryant,* 202 Conn. 676, 692, 523 A.2d 451 (1987); see *State* v. *Gold,* 180 Conn. 619, 630, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). In the present case, however, Wilson's statement does not exculpate the defendant but, rather, clearly *inculpates* the defendant.

This court has never extended the principles of *DeFreitas* to include inculpatory as well as exculpatory trustworthy third party statements against penal interest. The state argues that we should now so extend *DeFreitas.* We decline, however, to do so. The state accurately cites to several federal jurisdictions that have held that trustworthy third party statements, that are inculpatory to the defendant, are admissible. See, e.g., *United States* v. *Candoli,* 870 F.2d 496, 509 (9th Cir. 1989); *United States* v. *Katsougrakis,* 715 F.2d 769, 774–75 (2d Cir. 1983), cert. denied, 464 U.S. 1040, 104 S. Ct. 704, 79 L. Ed. 2d 169 (1984); *United States* v.

---

[8] Rule 804 (b) (3) of the Federal Rules of Evidence reads as follows:

"(b) Hearsay exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . .

"(3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

*Riley,* 657 F.2d 1377, 1383 (8th Cir. 1981), cert. denied, 459 U.S. 1111, 103 S. Ct. 742, 74 L. Ed. 2d 962 (1983); *United States* v. *Sarmiento-Perez,* 633 F.2d 1092, 1101 (5th Cir. 1981), cert. denied, 459 U.S. 834, 103 S. Ct. 77, 74 L. Ed. 2d 75 (1982). These jurisdictions only admit third party inculpatory statements, however, if such statements are corroborated by circumstances that indicate trustworthiness. See, e.g., *United States* v. *Candoli,* supra; *United States* v. *Katsougrakis,* supra; *United States* v. *Sarmiento-Perez,* supra, 1098; *United States* v. *Alverez,* 584 F.2d 694, 699, 701 (5th Cir. 1978).

Significantly, courts have failed to find sufficient indicia of trustworthiness surrounding inculpatory statements, made against a codefendant by a third party in police custody, to warrant their admission. See, e.g., *United States* v. *Palumbo,* 639 F.2d 123, 127–28 (3d Cir.), cert. denied, 454 U.S. 819, 102 S. Ct. 100, 70 L. Ed. 2d 90 (1981); *United States* v. *Sarmiento-Perez,* supra, 1102; *United States* v. *Love,* 592 F.2d 1022, 1025 (8th Cir. 1979); *United States* v. *Alverez,* supra, 701–702; *United States* v. *Bailey,* 581 F.2d 341, 345–46 (3d Cir. 1978). As the Third Circuit Court of Appeals noted in *United States* v. *Palumbo,* supra, 127: "The Advisory Committee on the Federal Rules of Evidence has warned, in particular, that the courts should exercise special caution when the statement was made by a defendant in police custody and against a co-defendant. 'Whether a statement is in fact against interest,' the committee observed, 'must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest.' Advisory Committee Note to Rule 804 *reprinted in* 4 J. Weinstein and M. Berger, *Weinstein's Evidence,* at 804-24." See *State* v. *Gold,* supra, 635. In *United States* v. *Sarmiento-Perez,* supra, the

Fifth Circuit Court of Appeals noted that in such situations there exists "obvious motives for falsification—the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy gone awry, the desire for revenge, all might lead an arrestee-declarant to misrepresent or to exaggerate the role of others in the criminal enterprise."[9]

In the present case, Wilson's statement implicated his codefendant, and was made to the police while Wilson was in custody. Furthermore, at the probable cause hearing no evidence was offered that corroborated Wilson's statement to the extent that it implicated the defendant in Ann Viner's murder. Therefore, even if we were to extend the principles of *DeFreitas* to encompass inculpatory third party statements, Wilson's statement lacks sufficient indicia of trustworthiness to be admissible.

In addition, Wilson's statement was not admissible under the catch-all exception to the hearsay rule. Under the catch-all exception a court may admit a statement that is technically hearsay and does not fall within the traditional hearsay exceptions, provided: "(1) there is a 'reasonable necessity' for the admission of such statement, and (2) the statement is supported by 'an adequate basis of assurance that the evidence has those qualities of reliability and trustworthiness attributed to other evidence admissible under long-established exceptions to the hearsay rule. . . .' " C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.25,

---

[9] Furthermore, the New Jersey Supreme Court Committee on Evidence stated that "declarations against the penal interest of a declarant should be inadmissible against another in the criminal prosecution of the latter, particularly if made while the declarant was in police custody . . . . It is widely thought that in criminal prosecutions such statements are too fraught with inherent untrustworthiness to merit admissibility." Report, New Jersey Supreme Court, Committee on Evidence (1963) pp. 170–71.

p. 414; see *State* v. *Stepney,* 191 Conn. 233, 249–50, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Reardon,* 172 Conn. 593, 597-98, 376 A.2d 65 (1977). Thus, it is clear from our above examination of Wilson's statement, that it lacks the requisite "reliability and trustworthiness" to be admissible under the catch-all exception.

In conclusion, we hold that Wilson's statement was inadmissible on evidentiary grounds.[10] Therefore, the trial court erred in admitting the statement at the defendant's probable cause hearing. Thus, since Wilson's statement was the only evidence offered by the state at the probable cause hearing that effectively implicated the defendant in Ann Viner's murder, and since our decision in *State* v. *McPhail,* supra, 170, states that "insufficiency of the evidence presented at the probable cause hearing will deprive the trial court of jurisdiction over the person of the defendant," the defendant's subsequent prosecution and conviction is rendered moot.[11]

---

[10] Given that we have concluded that Wilson's statement was inadmissible hearsay, we need not examine the defendant's claim that the admission of Wilson's statement violated his right to confrontation under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

[11] The dissent asserts that remanding this case for a new trial, after no error was found in the defendant's first trial, is "a flagrant waste of judicial resources and imposes a wholly unnecessary hardship on the family of the victim in being required to undergo the trauma of a second trial." We agree that, just like all cases that are remanded for a new trial following a finding of harmful error, another trial in this case will be traumatic. Nonetheless, we do not believe that this consideration warrants the abandonment of protecting constitutional principles. As Justice Thurgood Marshall of the United State's Supreme Court stated in his dissent in *Guardians Assn.* v. *Civil Service Commission,* 463 U.S. 582, 626, 103 S. Ct. 3221, 77 L. Ed. 2d 866 (1983), "a right without an effective remedy has little meaning."

Therefore, we believe that the state constitutional procedural principle that we reaffirmed less than two months ago in *State* v. *McPhail,* 213 Conn.

There is error, the judgment of conviction of felony murder is set aside and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion HEALEY and HULL, Js., concurred.

SHEA, J., with whom COVELLO, J., joins, dissenting. I agree with the majority that the trial court's ruling admitting, for the purpose of establishing probable cause against the defendant, the statement of his accomplice, Tyrone Wilson, was a clear violation of the hearsay rule and thus erroneous. I disagree, however, that this error, even though it leaves the finding of probable cause without sufficient support in the evidence, requires a remand for a new trial, which setting aside the judgment entails.

This is the first case in which the decision of this court in *State* v. *Mitchell,* 200 Conn. 323, 331, 512 A.2d 140 (1986), that a finding of probable cause is reviewable on appeal after a defendant has been proved guilty beyond a reasonable doubt of committing the crime involved, has resulted in setting aside the conviction

---

161, 170, 567 A.2d 812 (1989), where we stated "implicit in our decision [in *State* v. *Mitchell,* 200 Conn. 223, 512 A.2d 140 (1986),] was an understanding that, at the very least, insufficiency of the evidence presented at the probable cause hearing will deprive the trial court of jurisdiction over the person of the defendant, thus rendering moot any subsequent prosecution and conviction," is paramount to the concerns raised by the dissent. In sum, we adhere to the words of Justice Jackson of the United States Supreme Court as expressed in *Shaughnessy* v. *Mezei,* 345 U.S. 206, 73 S. Ct. 625, 97 L. Ed. 956 (1953): "Procedural fairness and regularity are of the indispensable essence of liberty. Severe substantive laws can be endured if they are fairly and impartially applied. Indeed, if put to the choice, one might well prefer to live under Soviet substantive law applied in good faith by our common-law procedures than under our substantive law enforced by Soviet procedural practices. Let it not be overlooked that due process of law is not for the sole benefit of an accused. It is the best insurance for the Government itself against those blunders which leave lasting stains on a system of justice . . . ." Id., 224–25 (Jackson, J., dissenting).

and remanding the case for "further proceedings," which necessarily include a new trial. Although in the interim we have reviewed several findings of probable cause, until now we have not been compelled by that precedent to engage in the illogic of ordering a new trial for a defendant when we have found the trial at which he was convicted to have been without error. *State* v. *McPhail,* 213 Conn. 161, 567 A.2d 812 (1989); *State* v. *Shannon,* 212 Conn. 387, 563 A.2d 646, cert. denied,    U.S.   , 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *John,* 210 Conn. 652, 557 A.2d 93, cert. denied,    U.S.   , 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989); *State* v. *Vinal,* 205 Conn. 507, 534 A.2d 613 (1987); *State* v. *Rollinson,* 203 Conn. 641, 526 A.2d 1283 (1987). In this case, however, by adhering to the *Mitchell* precedent, the majority finds it necessary to order further proceedings to determine probable cause and a new trial, "even though the defendant has already received a fair trial," as the opinion acknowledges. I agree with the majority that no other result than that reached by the opinion is possible in view of the prejudicial error committed at the probable cause hearing, unless we depart from *Mitchell* and hold that an erroneous finding of probable cause is a harmless error after a defendant has been found guilty beyond a reasonable doubt following a fair trial.

I concurred in the result reached in *Mitchell,* affirmance of the conviction, but dissented from the view of the majority as to reviewability of probable cause hearings upon the ground that errors in the determination of probable cause should be regarded as harmless, once a defendant has been convicted after a fair trial not impacted by such error. "A finding by a jury that a person is guilty beyond a reasonable doubt a fortiori signifies that there is probable cause to prosecute him. Even if the evidence offered at the probable cause hearing [is] inadequate to support the finding of prob-

able cause made by the trial court, it would still make no sense to vacate the jury's finding of guilt beyond a reasonable doubt after a fair trial in order to require the state to make an adequate showing of probable cause at this stage of the proceeding." *State* v. *Mitchell,* supra, 339 (*Shea, J.,* concurring). To set aside this defendant's felony murder conviction on the ground of a deficiency in the evidence at the probable cause hearing that was adequately cured by the evidence presented at trial is an absolutely futile exercise. The transcript of the trial unquestionably demonstrates the existence of probable cause to prosecute the defendant for felony murder. A remand for the purpose of another determination thereof, and a concomitant new trial, after no error has been found in his first trial, is a flagrant waste of judicial resources and imposes a wholly unnecessary hardship on the family of the victim in being required to undergo the trauma of a second trial.

As I observed in *Mitchell,* the principal concern of the majority in that case was that, without appellate review, General Statutes § 54-46a, which implements the seventeenth amendment to our state constitution, "would become a hollow shell." Id., 343. This consideration, of course, is not insignificant, but the absence of appellate review of probable cause hearings would create no diminution in the rights of defendants as they existed when a finding of probable cause by a grand jury was required. "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . . " *United States* v. *Calandra,* 414 U.S. 338, 345, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). Although the adequacy of the evidence presented to a grand jury was never subjected to judicial review at the appellate or trial court level, we never regarded that venerable institution as a "hollow shell."

If appellate review of probable cause hearings is to become standard criminal practice, it ought to be accomplished before a trial and conviction that make such a determination academic. To achieve pretrial review of a finding of probable cause, the legislature might well have provided for it, as it is their prerogative to define our jurisdiction. Conn. Const., art. V, § 1. The legislature did enact a provision for treating transfers of juveniles to the Superior Court under General Statutes §§ 46b-126 and 46b-127 as reviewable final judgments, after our decision had been published in *In re Juvenile (85-AB),* 195 Conn. 303, 488 A.2d 778 (1985), in which we had held that transfer orders were not appealable, because they were not final judgments.

This court, relying in part on *Mitchell,* has refused to apply to an appeal from a probable cause finding the principle of *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983), that "[a]n otherwise interlocutory order is appealable . . . where the order or action so concludes the rights of the parties that further proceedings cannot affect them" or to treat the probable cause hearing as "a separate and distinct proceeding from which an appeal would lie." Id.; *State* v. *Atkins,* 203 Conn. 33, 34, 522 A.2d 1234 (1987). There is reason to be concerned, undoubtedly, with the probable impact on the increase in the volume of appeals that is likely to result, as well as the opportunity to delay the trial of cases on their merits, that would be afforded by such an expansion of the right to appeal by either the legislature or this court. Nevertheless, such a solution would be preferable to continued adherence to *Mitchell,* which, in this case necessitates a new trial for a defendant found guilty of felony murder beyond a reasonable doubt following a trial that is conceded to have been fair.

Accordingly, I dissent.