[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Gaming Policy Board of the Department of Revenue Services, Division of Special Revenue revoking the temporary Jai Alai license of James Fetter and denying him admission to or attendance at all facilities licensed by the Gaming Policy Board or operated by the Division of Special Revenue. The sole basis for the revocation was that Fetter was engaged in professional gambling as defined by Connecticut General Statutes 53-278b.
The Gaming Policy Board adopted the decision of the hearing officer, Edward Osswalt, the designee of William Hickey, Executive Director of Department of Revenue Services, Division of Special Revenue, on April 1, 1991. The primary ground for the appeal is that the decision of the hearing officer was based entirely on inadmissible hearsay statements of Scott Hyatt, who never testified at the hearing and was not subject to cross examination by the plaintiff's attorney.
In determining that the plaintiff had engaged in professional gambling the hearing officer relied entirely on the testimony of Detective Richard Zaccagnino of the Connecticut State Police Legalized Gambling Investigation Unit. Detective Zaccagnino testified that the state police had information that Scott Hyatt, an announcer at the Milford Jai Alai Fronton, was operating an illegal bookmaking operation. Police searched garbage outside of Mr. Hyatt's residence and subsequently searched Mr. Hyatt's residence pursuant to a search warrant. Zaccagnino stated that two other people lived at Hyatt's residence.
The Department of Revenue Services introduced at the hearing over the objection of Mr. Fetter, documents which contained hand written notations and which were described by Detective Zaccagnino as being "gambling records". These documents were identified at the hearing as Exhibits 3-8. CT Page 2520 Detective Zaccagnino testified that he spoke to Scott Hyatt at his home on the night of the house search and Hyatt confirmed that he was involved in illegal gambling that James Fetter had bet with him on at least eight occasions during the 1990 football season totalling $500 to $600. Detective Zaccagnino admitted that he had obtained a written statement from Scott Hyatt. However, that written statement was never introduced into evidence. Zaccagnino admitted that he had only specifically questioned Hyatt about one of the so-called gambling records, Exhibit 3. Zaccagnino did not ask Hyatt to identify the handwriting in Exhibit 3 and Zaccagnino was unable to state with certainty whether the handwriting found on any of the Exhibits 3-8 was the handwriting of Scott Hyatt. Zaccagnino described the so-called gambling records and stated that the name James, James II or Fetter appeared on the records. Zaccagnino never questioned Hyatt to confirm that the references in the records were indeed references to Mr. Fetter. Moreover, Zaccagnino conceded that a "friendly" wager in a social context did not constitute professional gambling within the definition of 53-278b of the Connecticut General Statutes. Zaccagnino admitted that he was unable to state whether Fetter's placing bets with Hyatt constituted conduct which was social gambling or professional gambling. He referred to no statement made by Hyatt in which Hyatt stated that Fetter's wagers constituted professional gambling rather than social gambling. Moreover, there was no testimony that James Fetter had engaged in professional gambling.
The plaintiff claims that the entire basis for the revocation of his license was the hearsay statements of Scott Hyatt and, therefore, that the findings of the hearing officer were contrary to the law because the proceedings were in violation of Connecticut General Statutes 4-177c(a)(2), which provides in relevant part:
 In a contested case, each party and the agency conducting the proceeding shall be afforded the opportunity . . . at a hearing, to respond, to cross examine other parties, intervenors, and witnesses. . . .
The defendant argues that the statement of Scott Hyatt referred to and relied upon by Detective Zaccagnino at the hearing was admissible as an exception to the hearsay rule because it was a declaration against penal interest. CT Page 2521 Moreover, the defendant argues that even if that exception to the hearsay rule is inapplicable, hearsay is admissible in administrative proceedings.
The statements of Scott Hyatt referred to by Detective Zaccagnino at the hearing were not admissible as admissions against the penal interest of Scott Hyatt. Declarations against penal interest are subject to particular scrutiny and must have "safeguards reasonably equivalent to the oath and the test of cross examination" before they will be admissible. Ferguson v. Smazer, 151 Conn. 226, 232,196 A.2d 432 (1963). Before a declaration against penal interest will be admissible it must be corroborated in a manner that clearly indicates the trustworthiness of the proffered statement. State v. Rosado, 218 Conn. 239, 249, 588 A.2d 1066
(1991). In Schaffer v. Landy, 8 Conn. App. 96, 511, 1022 A.2d (1986) the Appellate Court held that the sworn written statement of an absent witness was properly admitted as an admission against the witness's penal interest. The court stated that substantial evidence corroborating the hearsay statement existed which rendered the statement sufficiently trustworthy within the admission against interest exception to the hearsay rule. Items mentioned in the statement were found at sites indicated in the statements. In addition, times, places and events mentioned in the statement were corroborated by other witnesses.
State v. Boyd, 214 Conn. 132, 138-139, 570 A.2d 1125
(1990) held that the written statement of a co-defendant should not have been admitted as a third party statement against penal interest when the statement was made while the declarant was in police custody and inculpated both the defendant and the declarant. The court found such a statement to be inherently untrustworthy because the declarant had a motive to falsify such as his desire to alleviate his own culpability by inculpating the defendant. The hearsay statements of Scott Hyatt related by Detective Zaccagnino at the hearing clearly failed to meet the requirement of trustworthiness to bring them within the declaration against penal interest exception to the hearsay rule. The statement was not written and clearly did not contain "safeguards reasonably equivalent to the oath and the test of cross examination" required under the Ferguson case. Moreover, the existence of the written statement, which was not introduced into evidence, tends to call into question the oral version of CT Page 2522 Hyatt's alleged statement about which Detective Zaccagnino testified. To the extent Hyatt's statement inculpated Fetter, as the hearing officer concluded it did, it was inherently untrustworthy under State v. Boyd, supra because it was made at a time when Hyatt was in police custody and had a motive to inculpate others, including James Fetter, to alleviate his own culpability.
The right of cross-examination is expressly provided for in contested hearings conducted by an agency subject to the Uniform Administrative Procedures Act, Connecticut General Statutes 4-178(5). Cross examination is an indispensable means of illiciting facts that may show motive, bias, interest or prejudice. State v. Fullwood, 199 Conn. 281, 286,507 A.2d 85 (1986). It is a substantial legal right which may not be abrogated at the discretion of the court Pickman v. Pickman,6 Conn. App. 271, 277-78, 505 A.2d 4 (1986). In the present case Scott Hyatt was not present at the administrative hearing and, therefore, obviously not subject to cross examination by Mr. Fetter's counsel.
The defendant argues that even if Mr. Hyatt's statements were hearsay and were not properly admissible under an exception to the hearsay rule, such statements were still properly considered by the hearing officer. Hearsay is admissible in administrative proceedings so long as it is reliable and probative, Tomin v. Personnel Appeal Board,177 Conn. 344, 348, 416 A.2d 1205 (1978); it does not substantially prejudice the licensee, Madow v. Muzio,176 Conn. 374, 382, 407 A.2d 997 (1978); or if there was other substantial evidence before the hearing officer, Lawrence v. Kozlowski, 171 Conn. 705, 713-715, 372 A.2d 110 (1976) cert. denied 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977).
The court in Madow v. Muzio held that on review a court may reverse or modify an agency's decision if the substantial rights of the appellant have been prejudiced because the administrative findings are "clearly erroneous" in view of of the reliable, probative and substantial evidence on the whole record. The court stated that even if it disregarded all the evidence which the appellant claimed was improperly admitted at the hearing, substantial evidence still remained which was clearly sufficient to sustain the conclusion of the commissioner. In this case, the only evidence before the hearing officer consisted of hearsay CT Page 2523 statements of Scott Hyatt and speculative characterizations of betting records which were never properly identified. In the absence of such evidence, there would, essentially, have been no evidence upon which the hearing officer could have based his conclusion that James Fetter engaged in professional gambling.
The court in Lawrence v. Kozlowski, supra, held that substantial prejudice must be affirmatively shown. Based on the foregoing the court finds that Fetter has met his burden of proving that he was substantially prejudiced by the admission of hearsay statements of Scott Hyatt and the so-called betting records.
Proceedings before administrative agencies are not bound by strict rules of evidence and procedure, but they cannot be conducted so as to violate fundamental rules of justice. Pizzola v. Planning and Zoning Commission, 167 Conn. 202,207, 355 A.2d 21 (1974). Nor may the informalities that are permissible in an administrative hearing be permitted to prejudice the rights of the parties. If this should happen the court is available to rectify the wrong. Adam v. Connecticut Medical Examining Board, 137 Conn. 535, 540,79 A.2d 350 (1951). The decision of the hearing officer from which the plaintiff appeals was contrary to the law because it was based entirely on hearsay statements and documents. The plaintiff was denied the fundamental right to cross examine the person who made the statements and allegedly authored the documents.
The plaintiffs claims that the decision of the hearing officer was further contrary to the law because the only regulation of the Division of Special Revenue which addresses the issue of wagering by a licensed player is Section 12-574-D26(k). That regulation, entitled "Players", provides:
(k) Wagering prohibited.
 No player under contract at a fronton, or his wife or blood relatives, may wager money or any other thing of value on the results of games played at any board licensed fronton. CT Page 2524
Fetter's license was not revoked pursuant to that regulation but, rather, pursuant to Section 12-574-D9a and Section12-574-E6(d)(B)(iii) of the Division's regulations.
Section 12-574-D9a(d) provides:
(d) Suspension — Revocations
 If the division shall find that the financial responsibility, character and general fitness of the licensee are such that the continued participation of such person will not be consistent with the public interest, convenience or necessity, and with best interests of Jai Alai generally, in conformity with the purposes of the act, it shall thereupon revoke or suspend said license.
Section 12-574-E6(d)(B)(iii) provides:
 The executive director shall have authority for good cause to find (sic) any occupational licensee in an amount not to exceed $2,500 and he or any unit head authorized by him may suspend or revoke any occupational licensee after a hearing held in accordance with Chapter 54 of the Connecticut General Statutes for good cause for any one of the following reasons: . . . (iii) if there has been a material change in the character or reputation of the licensee which the executive director determines is not in the best interest of the state of Connecticut.
The plaintiff argues that the agency promulgated specific regulation dealing with prohibited wagering by Jai Alai players, which regulation does not prohibit wagering other than wagering at a fronton. CT Page 2525
Administrative regulations have the force and effect of statutes. Citrella v. United Illuminating Co., 158 Conn. 600,608, 266 A.2d 382 (1969); Hartford Electric Light Co. v. Sullivan, 161 Conn. 145, 154, 285 A.2d 352 (1971). Where the statute or regulation itemizes the prohibited conduct, that itemization should be deemed exclusive. State v. Kish,186 Conn. 757, 766, 443 A.2d 1274 (1982); B.F. Goodrich Co. v. Dubno, 196 Conn. 1, 6, 490 A.2d 991 (1985). Regulation12-574-D26 applies specifically to the conduct of Jai Alai players, whereas the regulations relied upon by the Division of Special Revenue apply to all Jai Alai licensees (12-574-D9a), or to all persons or organizations required to be licensed pursuant to Chapter 226 of the Connecticut General Statutes (governs Division of Special Revenue and Gaming Policy Board) (12-574-E6(d)(B)(iii)). Where a statute contains specific and general references covering the same subject matter, the specific references prevail over the general. Atwood Regional School District No. 15, 169 Conn. 613,622, 363 A.2d 1038 (1975); Galvin v. Freedom of Information Commission, 201 Conn. 448, 457, 518 A.2d 64
(1986). Fetter's conduct did not violate the specific regulation prohibiting wagering by Jai Alai employees. Therefore, even if Fetter did violate Section 53-278b, such conduct would not constitute grounds for a license revocation under the Division of Special Revenues' own regulations.
Based on the foregoing, the court finds that substantial rights of the plaintiff have been prejudiced because the administrative findings, conclusions and decision were clearly erroneous in view of reliable, probative and substantial evidence on the whole record. The appeal is sustained and the case is remanded to the Department of Revenue Services, Division of Special Revenue for a new hearing.
By The Court Aurigemma, J. CT Page 2526