Terrence BOYD, Petitioner–Appellant,

v.

Larry R. MEACHUM, Commissioner of Correction, Respondent–Appellee.

No. 550.
Docket 95–2252.

United States Court of Appeals,
Second Circuit.

Argued Nov. 27, 1995.
Decided Feb. 23, 1996.

Jonathan L. Mannina, Silver, Golub & Teitell, Stamford, CT (Ernest F. Teitell, Silver, Golub & Teitell, Stamford, CT, of counsel), for Petitioner–Appellant.

Harry D. Weller, Assistant State's Attorney, Wallingford, CT, for Respondent–Appellee.

Before OAKES, McLAUGHLIN and LEVAL, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Terrence Boyd was charged in Connecticut state court with: (1) burglary in the first degree, in violation of Conn.Gen.Stat. § 53a–101(a)(2); (2) larceny in the first degree, in violation of Conn.Gen.Stat. §§ 53a–119 and 53a–122(a)(3); (3) larceny in the third degree, in violation of Conn.Gen.Stat. §§ 53a–119 and 53a–124(a)(1); and (4) felony murder, in violation of Conn.Gen.Stat. § 53a–54c. He was convicted after a jury trial of all counts except larceny in the first degree.

Boyd appealed just his felony murder conviction on the ground that, at a pre-trial hearing, as required by the Connecticut Constitution, *see* Conn. Const. art. I, § 8, the state had failed to establish probable cause to try him for that crime. The Connecticut Supreme Court reversed Boyd's felony murder conviction, agreeing that the state had indeed failed to establish probable cause to try him for that crime. *See State v. Boyd,* 214 Conn. 132, 570 A.2d 1125, 1129 (1990) ("*Boyd I*"). The case was remanded for further proceedings.

The state recharged Boyd with felony murder. Boyd moved to dismiss the indictment on double jeopardy grounds. The motion was denied. Boyd again appealed to the Supreme Court of Connecticut, which ruled that his retrial would not violate double jeopardy. *See State v. Boyd,* 221 Conn. 685, 607 A.2d 376, 380–82 (Conn.1992) (*"Boyd II"*). The United States Supreme Court denied Boyd's petition for a writ of certiorari. *See Boyd v. Connecticut,* 506 U.S. 923, 113 S.Ct. 344, 121 L.Ed.2d 259 (1992).

Boyd then filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the District of Connecticut (Peter C. Dorsey, *Chief Judge*), renewing his argument that the impending retrial would violate double jeopardy. The district court denied the petition, but granted Boyd's motion for a certificate of probable cause to appeal to this Court.

## BACKGROUND

Terrence Boyd and Tyrone Wilson robbed Ann Viner's house in New Canaan, Connecticut, while Viner was in the house. Viner was found dead at the scene. Boyd and Wilson were charged with: (1) burglary in the first degree; (2) larceny in the first degree; (3) larceny in the third degree; and (4) felony murder. Wilson pled guilty under a cooperation agreement with the state.

The Connecticut Constitution provides that no person can be "held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing," Conn. Const. art. I, § 8. Accordingly, the state court conducted a probable cause hearing on the felony murder charge against Boyd. At that hearing, the state presented little more than Wilson's written statement admitting that he had participated in the burglary, but blaming Boyd for the actual murder. The court found probable cause to try Boyd for felony murder, and a jury trial was ordered in Connecticut state court.

After the jury trial, Boyd was convicted of all counts except larceny in the first degree. The court sentenced Boyd to forty-five years' imprisonment. Boyd appealed only his felo-

ny murder conviction, arguing that, at the pre-trial hearing, the state had failed to establish probable cause to try him for that crime. Specifically, Boyd argued that Wilson's written statement introduced at the probable cause hearing was hearsay, and its admission into evidence violated Boyd's constitutional right to confrontation. The Connecticut Supreme Court agreed with Boyd's hearsay argument:

> [W]e hold that Wilson's statement was inadmissible on evidentiary grounds. Therefore, the trial court erred in admitting the statement at [Boyd's] probable cause hearing. Thus, since Wilson's statement was the only evidence offered by the state at the probable cause hearing that effectively implicated [Boyd] in Ann Viner's murder, and since our decision in *State v. McPhail,* [213 Conn. 161] 567 A.2d 812 [ (Conn.1989) ], states that "insufficiency of the evidence presented at the probable cause hearing will deprive the trial court of jurisdiction over the person of the defendant," [Boyd's] subsequent prosecution and conviction is rendered moot.

*Boyd I,* 570 A.2d at 1129 (not reaching the confrontation argument). The court set aside Boyd's felony murder conviction, and remanded the case for further proceedings.

The state recharged Boyd with felony murder, and a second probable cause hearing was held. Again the court found that probable cause existed to try Boyd for felony murder predicated on the burglary for which he had now been convicted (and which conviction Boyd had not appealed). Boyd then moved to dismiss the indictment on the ground that retrial for felony murder would violate double jeopardy. The trial court denied Boyd's motion to dismiss. Boyd filed an interlocutory appeal; that appeal was transferred to the Supreme Court of Connecticut, which ruled that retrial would not violate double jeopardy. *See Boyd II,* 607 A.2d at 380–82. The United States Supreme Court denied Boyd's petition for a writ of certiorari. *See Boyd v. Connecticut,* 506 U.S. 923, 113 S.Ct. 344, 121 L.Ed.2d 259 (1992).

Boyd then filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, in the District of Connecticut, again arguing that

the impending retrial for felony murder would violate double jeopardy. (The state court stayed further prosecution pending the resolution of his habeas petition.) The district court denied the petition, and granted Boyd's motion for a certificate of probable cause to appeal to this Court. Boyd now appeals, renewing the same arguments raised below.

## DISCUSSION

There is but one question: will a second trial for felony murder violate double jeopardy? We conclude that it will not and, thus, affirm the district court.

 The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Due Process Clause of the Fourteenth Amendment extends this guarantee to state proceedings. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The prohibition on double jeopardy protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). For purposes of double jeopardy, a greater offense is the "same offense" as any lesser included offense, and vice versa, *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977); therefore, a prior conviction for the lesser included offense prohibits a later prosecution for the greater offense. *Id.; see also Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (explaining the "same elements" test for determining whether two crimes are the "same offense" for double jeopardy purposes); *United States v. Dixon*, 509 U.S. 688, ──, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) (same).

 If a defendant obtains the reversal of a conviction after a successful appeal, retrial for the same offense is permissible. Several justifications have been proffered for this rule, including the notion that by appealing

his conviction the defendant has waived the double jeopardy defense. *See Green v. United States*, 355 U.S. 184, 189, 78 S.Ct. 221, 224–25, 2 L.Ed.2d 199 (1957). Perhaps the most persuasive theory is that the first jeopardy does not end with conviction, but rather continues through the appeal, and if successful, the remand and retrial are part of the original jeopardy. *See id.; United States ex rel. Jackson v. Follette*, 462 F.2d 1041, 1045–46 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 496 (1972). In other words the second trial, obtained at the defendant's own request, is a facet of the original jeopardy and is not a second prosecution for the same offense. Another settled principle is that no jeopardy attaches unless the trial court had "jurisdiction" to try the defendant. *See Serfass v. United States*, 420 U.S. 377, 391–93, 95 S.Ct. 1055, 1064–65, 43 L.Ed.2d 265 (1975); *Benton*, 395 U.S. at 797, 89 S.Ct. at 2064 (1969).

Boyd's argument creatively braids these principles. He recognizes the general theory of continuing jeopardy to retry a defendant who has mounted a successful appeal. He contends, however, that under Connecticut law, the state's failure to establish probable cause to try Boyd for felony murder before his first trial deprived the trial court of "personal jurisdiction" over him with regard to that offense. And that appears to be the law of Connecticut. *See State v. McPhail*, 213 Conn. 161, 567 A.2d 812, 817 (1989); *Boyd I*, 570 A.2d at 1129. Because jeopardy never attached when there was no jurisdiction, his argument runs, there was no original jeopardy on his felony murder charge that could properly "continue" during his successful appeal and subsequent remand.

By this argument Boyd seems headed to the conclusion that he may be retried for felony murder because he has never yet been in jeopardy. But now—*deus ex machina*—he finds his salvation in the burglary conviction. Boyd argues that his burglary conviction, as a conviction on a lesser included offense of burglary-based felony murder, is a conviction on the "same offense" as felony murder for purposes of double jeopardy. *See Brown*, 432 U.S. at 168, 97 S.Ct. at 2226–27. And because the jeopardy on his burgla-

ry conviction "ended" with the entry of final judgment on that conviction, his prosecution and conviction for the burglary is the constitutional predicate for a double jeopardy claim that bars a retrial for felony murder.

■ Viewed from a slightly different angle, Boyd's casuistic argument is easier to see. Double jeopardy prohibits *subsequent* prosecutions after the completion of a first jeopardy. *See United States v. McCormick,* 992 F.2d 437, 439–40 (2d Cir.1993) (double jeopardy protects against "*subsequent* prosecution" (emphasis added)); *Corey v. District Court,* 917 F.2d 88, 89–90 (2d Cir.1990) (double jeopardy operates as bar on a "*second* trial" (emphasis added)). Thus, to succeed, Boyd must show, first of all, that the jeopardy of his second felony murder trial attached only *after* his previous burglary conviction.

■ To do this, Boyd must also find a way to circumvent the "continuing jeopardy" principle that permits a retrial for an offense that resulted in a conviction as to which the defendant has won a reversal on appeal. Because "continuing jeopardy" works as a sort of relation-back doctrine, the jeopardy on Boyd's second felony murder trial, after his successful appeal, is deemed to have attached at the time of his *first* felony murder trial, which of course pre-dates the burglary conviction. *See, e.g., United States v. Larkin,* 605 F.2d 1360, 1368 (5th Cir.1979) ("a defendant may be retried on a lesser offense, of which he was convicted at an initial trial, after that conviction was reversed on appeal; and that . . . result obtains even though the first trial also resulted in a verdict of acquittal on a greater offense"). Boyd's own logic, therefore, compels him to find some way to "erase" the jeopardy created by the initial felony murder trial. Ever resourceful, Boyd asks us to disregard the first prosecution for felony murder by invoking the "no jurisdiction—no jeopardy" principle, which he believes applies because of Connecticut's characterization of a lack of probable cause (at the pre-trial hearing) as a lack of "personal jurisdiction."

■ We need not decide whether Boyd's burglary conviction and felony murder charge constitute the "same offense" for purposes of double jeopardy. In any event, Boyd cannot prevail on his underlying claim, which is grounded on the argument set forth above that a lack of "personal jurisdiction" as defined by Connecticut state law prevented jeopardy from attaching in his initial state court felony murder prosecution. We conclude that, for federal double jeopardy purposes, the Connecticut state court had personal jurisdiction over Boyd, and that jeopardy therefore attached in that proceeding.

The concept of "jurisdiction" in a double jeopardy context is a jurisprudential greased pig—easy to see, but tough to grasp. The principle finds its roots in *Ball v. United States,* 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377 (1891) (*"Ball I"*), and *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) (*"Ball II"*), where three men were tried for murder; two defendants were convicted, but Ball was acquitted. On appeal in *Ball I,* the Supreme Court held that the indictments were defective, because they failed to allege where the victim died. On remand, the state sought to retry all three defendants. Ball argued that a retrial would violate double jeopardy. Prefiguring Boyd's argument here, the state countered that the faulty indictment deprived the trial court of jurisdiction, and therefore that jeopardy had never attached. The Supreme Court in *Ball II* rejected this argument, stating that:

> "An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offence. But although the indictment was fatally defective, yet, if the court had *jurisdiction of the cause and of the party,* its judgment is not void, but only voidable by writ of error. . . .

*Ball II,* 163 U.S. at 669–70, 16 S.Ct. at 1194–95 (citations omitted) (emphasis added); *see also Benton,* 395 U.S. at 797, 89 S.Ct. at 2064 (quoting the above language from *Ball II* ).

In *United States v. Sabella,* 272 F.2d 206 (2d Cir.1959), we sought to explain what "jurisdiction" meant in the double jeopardy context. We found that jeopardy had attached in that case even though the federal convic-

tion on which the jeopardy depended was under a federal law that did not provide the district court the power to pronounce a sentence for its violation. Judge Friendly stated that:

> [T]he District Court did have jurisdiction in the basic sense that "[a] cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and effect." The District Court had been endowed with jurisdiction of "all offenses against the laws of the United States".... The District Court likewise had *jurisdiction over the persons of the defendants* and territorial jurisdiction over the offense charged.

> . . . . .

*Id.* at 209 (citations omitted) (emphasis added). While these cases agree that a trial court must have jurisdiction before jeopardy will attach, and agree that the concept of jurisdiction includes jurisdiction "over the person" of the defendant, they do not tell us where to look to evaluate whether there was sufficient "personal jurisdiction."

██ The contours of the Fifth Amendment's guarantee against double jeopardy are indisputably "federal"; and the question whether the state court had sufficient jurisdiction for jeopardy to attach in Boyd's initial prosecution for felony murder is necessarily one of federal law. *See Kennedy v. Washington,* 986 F.2d 1129, 1134 (7th Cir.1993) ("the question whether a conviction should be treated as an implied acquittal for purposes of the double jeopardy clause of the U.S. Constitution is a question of federal, not state, law"), *cert. denied,* —— U.S. ——, 114 S.Ct. 876, 127 L.Ed.2d 73 (1994). Thus it is clear that, while we may choose to look to state law to determine whether or not a criminal court has sufficient jurisdiction for jeopardy to attach, a state-law conclusion that the court had no "personal jurisdiction" over the defendant is not binding upon us in the double jeopardy context.

██ In a similar situation, the Ninth Circuit dealt with a California state-law rule that a criminal court has no "jurisdiction" from the time a competency hearing is ordered until that hearing is actually held. Analyzing whether a conviction in the absence of this "jurisdiction" violated a defendant's federal due process rights, the court "[was] not persuaded that a constitutional violation necessarily occurs when the convicting state court acts without jurisdiction purely as a matter of state law." *Hernandez v. Ylst,* 930 F.2d 714, 719 (9th Cir.1991). We agree with the Ninth Circuit that a federal constitutional right, to have any constant and discernible substance, cannot turn on the vagaries of state procedural definitions.

Connecticut's decision to characterize a lack of probable cause as a lack of "personal jurisdiction" is purely semantic, and has no real or practical consequence. Connecticut could just as well have called a lack of "probable cause" nothing more than that, and the effect would be the same—a conviction rendered thereupon would be void, but the state would have the right to retry the defendant for the crime. *See, e.g., Boyd I,* 570 A.2d at 1129–30 & n. 11 (expressly contemplating retrial after faulty probable cause hearing deprived trial court of "personal jurisdiction").

██ When the claim is made that jeopardy never attached in a state criminal court because that court lacked "personal jurisdiction" over the defendant, it will not suffice merely to note the state definition. Rather, the defendant (or the government, as the case may be) must show that, in a larger sense, the state court was without fundamental power to exercise jurisdiction over his person. *See, e.g., Illinois v. Somerville,* 410 U.S. 458, 459, 467–68, 93 S.Ct. 1066, 1068, 1071–72, 35 L.Ed.2d 425 (1973) (jeopardy attached in state trial on defective indictment, even though state law defined that defect as "jurisdictional"). That is to say, the defendant must show not merely that the criminal court did not properly exercise jurisdiction over his person as a matter of state law, but rather that the court could not exercise personal jurisdiction over him without violating the Constitution, or perhaps other federal law depriving the state court of personal jurisdiction. *See, e.g., Frisbie v. Collins,* 342 U.S. 519, 523, 72 S.Ct. 509, 512, 96 L.Ed. 541 (1951) (indicating that, although

violation of the Federal Kidnapping Act in bringing a defendant before a state criminal court does not deprive that court of power to try the defendant, "[i]t may be that Congress could add such a sanction"); *United States v. Lira*, 515 F.2d 68, 72–73 (2d Cir.) (Oakes, *J.*, concurring) (contemplating a federally enforced bar on personal jurisdiction in a criminal court because of a violation of certain international laws or federal treaties), *cert. denied*, 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975).

While the federal constitutional requirements of personal jurisdiction in a civil setting are reasonably well-defined, *see Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), this is not so in a criminal case. It has been said that a criminal court "has *personal* jurisdiction over any party who appears before it, regardless of how his appearance was obtained." *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991) (emphasis in original); *see also United States v. Stuart*, 689 F.2d 759, 762 (8th Cir. 1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983). The Supreme Court has also indicated that the power of a state criminal court to try a person for a crime is not impaired by the fact that he has been forcibly brought within that court's jurisdiction. *See Frisbie*, 342 U.S. at 522, 72 S.Ct. at 511.

We recognize that "notions of due process have been expanded since *Frisbie*," *United States v. Pelaez*, 930 F.2d 520, 525 (6th Cir. 1991); *see also United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir.) (contemplating due process limits to *Frisbie* where conduct of law officials is egregious), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). We are not called upon here, however, to decide how far that expansion might take us. Boyd bottoms his argument foursquare upon the Connecticut state-law characterization of a lack of probable cause as a want of "personal jurisdiction." He candidly concedes that the "jurisdictional nature of Connecticut's constitutionally-mandated probable cause hearing" is "unique" among the states. And, when pressed at argument

to do so, Boyd's counsel could not suggest any functional or substantive consequence of this definition.

Importantly, Boyd does not claim that the state trial court had no power, in a "basic sense," to render a judgment of conviction over him for a properly pled charge of felony murder. There is no claim that he was tried in the wrong court, or was tried in absentia, or was otherwise denied due process. In sum, he makes no argument that the state criminal court exercised personal jurisdiction over him in violation of the Constitution or other federal law, as discussed above.

■ Properly understood in the federal double jeopardy context, then, the trial court had sufficient jurisdiction over Boyd for jeopardy to attach in his initial prosecution for felony murder. When Boyd successfully appealed that conviction, the first jeopardy "continued," such that retrial does not violate double jeopardy.

We have considered all of Boyd's additional arguments, and find them to be unavailing.

### CONCLUSION

Accordingly, the judgment of the district court denying Boyd's habeas petition is AFFIRMED.