******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AKOV ORTIZ *v.* COMMISSIONER
# OF CORRECTION
# (AC 47672)

Suarez, Clark and Wilson, Js.

*Syllabus*

The petitioner, who had been convicted of several crimes, including murder, appealed, following the granting of certification, from the habeas court's judgment dismissing his petition for a writ of habeas corpus. He claimed that the court improperly concluded that the respondent Commissioner of Correction had correctly calculated the presentence confinement credit to which the petitioner was entitled for the time that had elapsed between his arrest for murder and his sentencing on that charge. *Held*:

The habeas court properly dismissed the petitioner's habeas petition on the ground that it failed to state a claim on which relief could be granted, as the respondent's calculation of the petitioner's presentence confinement credit pursuant to statute (§ 18-98d (a) (1) (A)) was correct.

The petitioner's contention that he was entitled to presentence confinement credit because the various crimes of which he had been convicted arose out of a single course of conduct was unavailing, as each of the sentences imposed on him, which were to run concurrently with each other, had arisen out of a different incident on a different date under a different docket number, and, thus, the petitioner's appeal was controlled by *Harris* v. *Commissioner of Correction* (271 Conn. 808), which held that presentence confinement credit that accrues simultaneously on more than one docket is utilized fully on the date it is applied to a petitioner's first sentence and cannot be counted a second time to accelerate a discharge date for any subsequent sentence without violating the language of § 18-98d (a) (1) (A).

Argued December 4, 2025—officially released May 26, 2026

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition in part; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court, which dismissed the appeal; subsequently, the Supreme Court denied the petitioner's petition for certification to appeal; thereafter, the court, *Bhatt, J.*, granted the respondent's motion to dismiss the remaining counts of the petition and rendered judgment

thereon, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed*.

*Judie Marshall*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, supervisory assistant state's attorney, and *Stephen R. Finucane*, assistant attorney general, with whom, on the brief, were *Michael A. Gailor*, state's attorney, *William Tong*, attorney general, and *Erin Stack*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SUAREZ, J. The petitioner, Akov Ortiz, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus (operative petition) pursuant to Practice Book § 23-29.[1] The petitioner claims, inter alia, that the court (1) abused its discretion in denying his petition for certification to appeal from its judgment dismissing the third count of his operative petition,[2] and (2) improperly concluded that

[1] Practice Book § 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that:

"(1) the court lacks jurisdiction;

"(2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted;

"(3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition;

"(4) the claims asserted in the petition are moot or premature;

"(5) any other legally sufficient ground for dismissal of the petition exists."

[2] We need not consider whether Judge Newson abused his discretion in denying the petition for certification to appeal following his dismissal of the third count of the operative petition. On January 3, 2024, this court dismissed the petitioner's prior appeal taken from the dismissal of the third count of the petition as well as the court's denial of his petition for certification to appeal from that ruling. This court concluded that the appeal was not taken from a final judgment in light of the fact that it did not dispose of all of the counts of the operative petition for a writ of habeas corpus. Accordingly, Judge Newson lacked the discretion to grant the motion for certification to appeal not because the underlying

the respondent, the Commissioner of Correction, had correctly calculated the petitioner's presentence confinement credit. We affirm the judgment of the habeas court.[3]

The following procedural history and facts, as set forth previously by this court in the petitioner's prior

issue was frivolous, but because the petitioner sought to appeal from an interlocutory ruling. Moreover, following the rendering of a final judgment in this case, Judge Bhatt, in his gatekeeping function, certified that appellate review was warranted. Thus, the petitioner is able to present any issue on appeal, so long as the respondent is not prejudiced thereby. This necessarily includes the propriety of Judge Newson's dismissal of count three of his operative petition.

[3]The petitioner also claims that the habeas court incorrectly determined that parole eligibility was a sufficient remedy for the sentencing court's alleged violation of his rights pursuant to *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Although the petitioner concedes that "[o]ur Supreme Court's holding in *State* v. *McCleese*, 333 Conn. 378 [215 A.3d 1154] (2019), makes clear that parole eligibility provides an appropriate remedy for a *Miller* violation," he nevertheless contends that his eligibility for parole was incorrectly calculated from his July 12, 2004 sentencing date, rather than from his August 19, 1999 arrest and arraignment date. The petitioner argues that this alleged error, "and his resultant parole eligibility date, constitute cruel and unusual punishment, in violation of the eighth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the Connecticut constitution, and his due process rights have been violated." Specifically, the petitioner argues that "[p]arole eligibility is an insufficient remedy in the present case because the petitioner is not parole eligible within a constitutionally and statutorily permissible time frame due to the denial of his presentence confinement credit." The petitioner maintains that he should be eligible for parole "after 60 percent of his 47 year sentence, or after 28.2 years" but that he is "effectively not eligible to see the [Board of Pardons and Paroles] for 33 years after his arrest for murder." The respondent counters, inter alia, that the petitioner's *Miller* claim is not preserved or adequately briefed for review and that it fails on its merits. Although the petitioner presently argues that the respondent incorrectly calculated his parole eligibility date, he also argues that, even if the respondent had correctly calculated his presentence confinement credit and parole eligibility date, such parole eligibility was an insufficient remedy for the alleged *Miller* violation. The petitioner correctly recognizes that he did not frame his argument in this exact fashion in the habeas court. Consequently, the habeas court did not address a claim of this nature in its memorandum of decision. "A petition for a writ of habeas corpus must set forth specific grounds for the issuance of the writ. Practice Book § 23-22 (1) specifically provides that the petition shall state the specific facts upon which each specific claim of illegal confinement is

appeals and as found by the habeas court, are relevant to this appeal. "On April 14, 1997, a burglary occurred at a residence located on Plains Road in Haddam. During the course of the burglary, eight guns and a hunting knife were stolen. On April 17, 1997, the [petitioner] told Louis Labbadia that he had committed the burglary. Labbadia reported this information to the police the same day.

"In July, 1998, the [petitioner] went to the home of Labbadia's fiancée, Robin Bonita, in Middletown. Bonita told the [petitioner] that Labbadia 'had gone to the police . . . .' On or about July 18, 1998, Labbadia was reported missing by his family. His remains were discovered on March 21, 1999, in Middletown.

"On June 13, 1999, the [petitioner] went to the home of Kristen Quinn, his former girlfriend, and knocked on her window. The [petitioner] told Quinn that he had killed Labbadia by stabbing him with a knife. The [petitioner] also told Quinn that he had dragged the body into a wooded area and disposed of the knife by throwing it in a river. The [petitioner] indicated that, were it not for his conversation with Bonita, Labbadia would still be

based and the relief requested . . . . A reviewing court will not consider claims not raised in the habeas petition or decided by the habeas court. . . . Appellate review of claims not raised before the habeas court would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 131 Conn. App. 336, 351, 27 A.3d 404 (2011), aff'd, 312 Conn. 345, 92 A.3d 944 (2014); see also *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 580, 941 A.2d 248 (2008) ("[t]his court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled [on] and decided by the court adversely to the [petitioner's] claim" (internal quotation marks omitted)); *Vazquez* v. *Commissioner of Correction*, 128 Conn. App. 425, 434, 17 A.3d 1089 (same), cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011). Moreover, because the unpreserved claim does not relate to the habeas court's conduct of the trial, the petitioner is unable to obtain extraordinary review of the claim. Cf. *Banks* v. *Commissioner of Correction*, 347 Conn. 335, 359–60, 297 A.3d 541 (2023) (unpreserved claims challenging habeas court's handling of habeas proceeding are reviewable under plain error doctrine embodied in Practice Book § 60-5 and pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), if they are not frivolous).

alive. Quinn wrote down what the [petitioner] had told her and showed these notes to her mother the following day. Shortly thereafter, this information was conveyed to [the] police.

"On August 7, 1999, the [petitioner] again went to Quinn's home. The [petitioner] showed Quinn 'a small handgun' and asked her to come outside. Quinn then exited the residence through her bedroom window. The [petitioner] told Quinn that he had the gun for 'insurance' if she told 'the cops about what he said about [Labbadia].' The [petitioner] said that if Quinn spoke to the police '[her] house was going to go up in smoke . . . .' The [petitioner] stated that he knew where Quinn's grandparents lived. The [petitioner] told Quinn that he was going to 'put [her down] on [her] knees, put the gun to [her] head and scare [her] straight.' Later, Quinn informed the police of these events.

"At 10:30 p.m. on August 10, 1999, the [petitioner] called Quinn to arrange a meeting at [the Wesley School] near Quinn's home. Quinn told her mother about the call and her mother notified the police." (Footnotes omitted.) *State* v. *Ortiz*, 133 Conn. App. 118, 120–21, 33 A.3d 862 (2012), aff'd, 312 Conn. 551, 93 A.3d 1128 (2014).

"Because the police had a warrant for the [petitioner's] arrest, they planned to arrest the [petitioner] when he attempted to meet Quinn at the Wesley School. Two detectives with the Middletown [P]olice [D]epartment, Stephen Augeri and Jorge Yepes, initially were sent to the school at approximately 10:45 p.m. so that they could observe the area in preparation for the arrest. The detectives returned to the police station and briefed other officers on the area and their plan for the arrest. The plan consisted of using nine officers to apprehend the [petitioner] by dispersing the officers at various points around the school, including a nearby footbridge, the roof of the school and the playground area. To take the [petitioner] into custody, the officers planned to surprise him as he crossed the footbridge. Four officers, William Warner, Jeffrey Mefferd, Augeri and Yepes, were

assigned to the footbridge location. Augeri and Warner were assigned to hide in the reeds at the right and left side of the bridge where the [petitioner] was expected to cross into a field. The other officers were dispersed at various points around the school grounds to prevent the [petitioner's] escape.

"The officers were dressed in plain clothing, which consisted of dark blue raid jackets with yellow lettering. They arrived at the Wesley School at approximately midnight on August 11, 1999. After parking their vehicles at a nearby restaurant, they walked to their assigned locations around the school. Augeri and Warner waited at the footbridge, as assigned, and practiced the plan to surprise the [petitioner] by taking hold of both of his arms.

"The [petitioner] left [his friend's] home [to meet Quinn] at approximately 12:45 a.m. As the [petitioner] proceeded along a path toward the footbridge, one of the officers saw that the [petitioner] was carrying a handgun. As the [petitioner] approached the footbridge, he briefly hesitated before proceeding slowly across. Augeri and Warner announced themselves to the [petitioner] as police officers and attempted to take hold of him. The [petitioner], however, managed to slip from their grasp. In the moments following, approximately five to seven gunshots were fired. The other officers in the area rushed to the scene and discovered that Warner had been shot in both arms and one leg, and that Augeri had suffered one gunshot wound to the right arm. The [petitioner] also suffered one gunshot wound. Warner, Augeri and the [petitioner] were then taken to a hospital and treated for their injuries." *State* v. *Ortiz*, 79 Conn. App. 667, 670–71, 830 A.2d 802, cert. denied, 266 Conn. 933, 837 A.2d 806 (2003).

Thereafter, "[t]he petitioner was the defendant in multiple matters that were pending in the Middle[sex] judicial district. . . . [H]e was arrested on August 11, 1999, on Docket [No.] MMX-CR-99-0151142-T ('tampering case'), on August 19, 1999, on Docket [No.]

MMX-CR-99-0151223-T ('murder case'), on October 26, 1999, on Docket [No.] MMX-CR-99-0151946-T ('assault case'), and on January 13, 2000, on Docket [No.] MMX-CR-00-01252593 ('burglary case')." The petitioner was held in lieu of bond after his arrest on August 11, 1999, additional bonds were imposed on each of the subsequent files, and he remained in custody in lieu of those bonds while the cases were pending.

"On September 7, 2001, the trial court, *Clifford*, *J.*, ruled that the assault case . . . had to be tried separately from the other matters, which would be joined for trial.[4] The assault case . . . proceed[ed] to trial first, and on October 19, 2001, the petitioner was found guilty by a jury of multiple charges. On December 7, 2001, the court, *Clifford*, *J.*, sentenced him to a total effective sentence of thirty-six years to serve,[5] five of those being minimum mandatory.

"On January 22, 2003, the petitioner was charged in Docket [No.] MMX-CR-03-0163940 . . . (escape case) for an incident that occurred on that same day.[6]

"After consolidated jury trials on the tampering . . . the murder . . . and burglary . . . cases, the jury convicted the petitioner of multiple charges in the tampering case[7] . . . but deadlocked on all charges in the murder . . . and

[4]"Prior to the decision in *State* v. *Payne*, 303 Conn. 538, 549–50, 34 A.3d 370 (2012), there was a presumption of joinder for purposes of trial."

[5]"Under [the assault case], the petitioner was convicted of assault in the first degree, pursuant to General Statutes § 53a-59 (a) (1), assault of public safety personnel, pursuant to General Statutes § 53a-167c (a) (1), carrying a pistol without a permit, pursuant to General Statutes § 29-35, and two more counts of assault in the first degree, pursuant to . . . § 53a-59 (a) (5)."

[6]"Given the fact that the petitioner was actively serving a sentence at the time of his 'escape,' it would not have any impact on the calculation of the pretrial detention credit [at] issue here. See General Statutes § 18-98d (a) (1) (B)."

[7]"Under [the tampering case], the petitioner was convicted of tampering with a witness, General Statutes § 53a-151 (a); trespass in the first degree, General Statutes § 53a-107; and carrying a pistol without a permit, General Statutes § 29-35."

burglary . . . cases. On May 29, 2003, the court, *Dyer, J.*, sentenced the petitioner in the tampering case . . . to a total effective sentence of six years, to be served consecutively to the thirty-six year sentence he was already serving for the assault case . . . . The murder and burglary cases were returned to the docket for further proceedings. Therefore, as of May 29, 2003, the petitioner was serving a total effective sentence of forty-two years [of incarceration] on the assault . . . and tampering cases . . . .[8]

"Subsequently, on May 24, 2004, the petitioner entered into a plea agreement to resolve the remaining cases.[9] Pursuant to that plea agreement, on July 12, 2004, he was sentenced to forty-six years [of incarceration] on the murder case . . . one year consecutive on the escape case . . . [and] a total effective sentence of five years concurrent [on] the burglary case . . . for a total effective sentence of forty-seven years [of incarceration], which was to be served *concurrently* to the forty-two year sentence he was already serving." (Citations omitted; emphasis in original; footnote added; footnotes in original; internal quotation marks omitted.)

On October 16, 2017, the petitioner filed the underlying petition for a writ of habeas corpus. The operative three count amended petition dated July 15, 2020, alleged in

---

[8]"The petitioner did appeal the dispositions of these cases; however, resolution of the appeals is not relevant to the current proceedings."

[9]The petitioner pleaded guilty, under the *Alford* doctrine, to the crimes of murder, burglary in the third degree, larceny in the third degree, cruelty to animals, stealing firearms, escape from custody, and to violating his probation. "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. . . . The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty." (Emphasis omitted; internal quotation marks omitted.) *Glen S.* v. *Commissioner of Correction*, 223 Conn. App. 152, 155 n.3, 307 A.3d 951, cert. denied, 348 Conn. 951, 308 A.3d 1038 (2024).

count one that "the petitioner's right to be free from cruel and unusual punishment was violated because the sentencing court did not fully consider and weigh the mitigating factors of youth when deciding his sentence"; count two alleged that "the petitioner's state and federal due process rights were violated because the sentencing court did not fully consider and weigh the mitigating factors of youth when deciding his sentence"; and count three alleged that "the petitioner's substantive due process rights were violated by the respondent's calculations of the petitioner's jail credit."

On February 24, 2023, the habeas court, *Newson, J.*, issued a notice of possible dismissal pursuant to Practice Book § 23-29. The notice provided in relevant part: "[T]he petitioner seeks pretrial sentence detention credits on one matter for time when he was a sentenced prisoner in a separate matter, which was contrary to the law at the time of the petitioner's sentencing." The notice further provided that the parties could submit a written response to the proposed dismissal. In his memorandum of law opposing dismissal, the petitioner asserted, inter alia,[10] that the court had the authority to appropriately apply the petitioner's pretrial confinement credit to his total effective sentence of forty-seven years of incarceration, and that the respondent had erroneously applied his pretrial confinement credits to his single assault conviction instead of applying them to his total effective sentence.

In a memorandum of decision dated April 5, 2023, the habeas court dismissed the third count of the operative petition. The court noted that "the petitioner assert[ed] in claim three that he [was] entitled to 841 days of pretrial detention credit . . . against the forty-seven year murder . . . burglary . . . and escape sentences from August 19, 1999, the day he was first held on bond for the murder case . . . through December 7, 2001, when he

---

[10]The petitioner also asserted in his memorandum of law in opposition to dismissal that the stipulated judgment did not preclude him from seeking relief in the form of corrected application of his presentence confinement credit. That issue is not before us on appeal. See footnote 14 of this opinion.

began serving his sentence on the assault case." (Citations omitted; internal quotation marks omitted.) The court further stated that the petitioner "claims the [respondent] applied 848 days of pretrial detention credit against [his thirty-six year sentence in the assault case], which would calculate back to when the petitioner was held in lieu of bond on August 12, 1999.[11] When the petitioner was later given the forty-seven year concurrent sentence on the murder . . . [the] burglary . . . and [the] escape . . . cases on July 12, 2004, the [respondent] transferred 841 days of that pretrial detention credit from the forty-two year sentence and applied it to reduce the forty-seven year sentence. As a simplified explanation, this was done because, at least as the [respondent] understood the law at that time, [the respondent was] obligated to apply pretrial detention credits to concurrent sentences, even those imposed at different times, in a way that would maximize the petitioner's expected discharge date.[12] On

[11]"August 12, 1999, is actually the date when the petitioner was arrested on the tampering case . . . which was not disposed until March 11, 2003. He was not arrested on the assault case . . . until October 26, 1999. Therefore, according to information provided by the Department of Correction Record Specialist, Michelle Deveau, during [an] on the record pretrial, the actual pretrial detention credit applied on December 7, 2001, was 773 days, from October 26, 1999, to December 7, 2001. When the consecutive sentence on the tampering . . . case was later imposed on May 29, 2003, however, additional pretrial detention credit of 77 days from when he was first held on bond on that case on August 12, 1999, to October 26, 1999, which, as a result of the application of the 773 days of pretrial detention credit discussed above, was the date he had *legally* begun to serve his sentence on the assault case . . . . Under the law, since the sentences in [the assault case] and [the tampering case] were imposed consecutively, they merged into a single sentence of forty-two years. Therefore, while the petitioner *did* eventually receive a total of 848 days (773 + 75 = 848) of pretrial credit against that total effective sentence of 42 years, from the day he was initially held on bond on [the tampering case] on August 12, 1999, to the day he was sentenced on [the assault case], on December 7, 2001, the entirety of that 848 days was not actually applied against his sentences until May 29, 2003." (Citations omitted; emphasis in original; internal quotation marks omitted.)

[12]"The pretrial detention credit transferred to the forty-seven year sentence on the murder case . . . burglary case . . . and the escape case . . . was from December 7, 2001, when the petitioner was sentenced on

May 19, 2005, however, pursuant to the decision in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004), the [respondent] transferred that pretrial detention credit back to the forty-two year assault . . . and tampering . . . sentence, where it had originally been applied." (Citations omitted; footnotes in original.)

In its memorandum of decision, the habeas court stated that our Supreme Court in *Harris* held that, " 'when concurrent sentences are imposed on different dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence. Hence, they cannot be counted a second time to accelerate the discharge date of any subsequent sentence without violating the language of [General Statutes] § 18-98d (a) (1) (A).' [13] . . .

the assault case . . . back to when the petitioner was first held in lieu of bond on the tampering case . . . on August 12, 1999." (Citations omitted; internal quotation marks omitted.)

[13] General Statutes § 18-98d (a) (1) (A) provides: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, and prior to October 1, 2021, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (i) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (ii) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. In the case of a fine, each day spent in such confinement prior to sentencing shall be credited against the sentence at a per diem rate equal to the average daily cost of incarceration as determined by the Commissioner of Correction."

We note that, although § 18-98d has been amended since the events underlying the filing of the habeas petition; see, e.g., Public Acts 2001, No. 01-78; those amendments have no bearing on the merits of this

[Our Supreme Court] stated further that, 'presentence credit is a creature of statute and that, as a general rule, such credit is not constitutionally required. . . . Since presentence confinement credits are a matter of legislative grace, the manner in which they are applied to reduce a sentence and the proscription against double counting are properly determined by the legislature.'" (Citation omitted; footnote added.)

The habeas court concluded that "the pretrial detention credit the petitioner was entitled to in the present case was properly applied to reduce the sentences on the cases that were disposed of first in time, which were the 'assault' . . . and 'tampering' . . . sentences amounting to the total effective forty-two year sentence. Applying pretrial detention credit from August 12, 1999, to December 7, 2001, against those first sentences consumed all of the available pretrial detention credit for when 'the sole reason for [the petitioner's] presentence confinement' was that he was being held in lieu of bond. 'Hence, [those days] cannot be counted a second time to accelerate the discharge date of [the petitioner's subsequent forty-seven year 'murder' . . . 'burglary' . . . and 'escape' . . . sentences] without violating the language of § 18-98d (a) (1) (A).'" (Citations omitted.) The court, therefore, dismissed the third count of the operative petition for failure to state a claim on which habeas relief can be granted pursuant to Practice Book § 23-29. The petitioner filed a timely petition for certification to appeal, which the court denied.[14]

On October 11, 2023, the respondent filed a return denying the material allegations in the remaining two counts of the operative petition and asserting that the petitioner had failed to state a claim on which relief

appeal. In the interest of simplicity, we refer to the current revision of the statute.

[14]In June 2023, the petitioner appealed, challenging the habeas court's order denying his petition for certification to appeal, but this court dismissed that appeal for lack of a final judgment. Thereafter, our Supreme Court denied the petition for certification to appeal. See *Ortiz* v. *Commissioner of Correction*, 348 Conn. 953, 308 A.3d 1038 (2024).

could be granted because he previously had entered into a stipulated judgment that foreclosed further civil actions challenging the same convictions that were challenged in the present action. On that same date, the respondent filed a motion to dismiss counts one and two of the operative petition pursuant to Practice Book § 23-29 (2) with a memorandum of law in support of the motion. The petitioner filed a memorandum of law in opposition to the respondent's October 11, 2023 motion to dismiss on November 7, 2023.

On December 5, 2023, the habeas court, *Bhatt, J.*, ordered the parties to submit briefs addressing whether the court had "jurisdiction over any of the counts remaining in the amended petition in light of [General Statutes §] 54-125a (f) and (g) . . . ."[15] (Citations omitted.) The respondent and the petitioner each filed motions for summary judgment on March 18 and 20, 2024, respectively, in response to the court's order. On March 27, 2024, the court heard argument on the October 11, 2023 motion to dismiss and the motions for summary judgment.

[15] General Statutes § 54-125a (f) provides in relevant part: "(1) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ."

General Statutes § 54-125a (g) provides in relevant part: "(1) Notwithstanding the provisions of subsections (a) to (f), inclusive, of this section, a person convicted of one or more crimes committed while such person was under twenty-one years of age, who was sentenced on or before October 1, 2005, and who received a definite sentence or total effective sentence of more than ten years' incarceration for such crime or crimes committed on or before October 1, 2005, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater . . . ."

On April 1, 2024, the habeas court issued a memorandum of decision dismissing the first and second counts of the operative petition on the ground that, "since [the petitioner] was parole eligible, controlling Connecticut case law dictates that there is no constitutional violation" pursuant to *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).[16] Accordingly, the court determined that the operative petition failed to state a claim on which relief could be granted and dismissed the petition. The court noted that, in the alternative, for the same reasons, it would deny the petitioner's motion for summary judgment and grant the respondent's motion. Thereafter, the petitioner filed a timely petition for certification to appeal from the court's April 1, 2024 judgment dismissing the first and second counts of the operative petition, which the court granted. This appeal followed.

The petitioner claims that the habeas court, *Newson, J.*, improperly dismissed his presentence confinement credit claim on the ground that it failed to state a claim on which habeas relief could be granted. Specifically, the petitioner argues that his "unique procedural history warrants application of presentence confinement credit under . . . §18-98d since he is similarly situated to other petitioners whose unique procedural posture warranted application of credit under the statute." The petitioner therefore argues that he is entitled to 1789 days of presentence confinement credit,[17] equal to "the

---

[16] We note that, in its April 1, 2024 memorandum of decision dismissing the first and second counts of the operative petition, the habeas court noted that it did not need to decide whether the petition was precluded by the stipulated judgment, in light of the dismissal of the petition on the ground that the petitioner's *Miller* claim, namely, that parole eligibility is not an adequate remedy for a *Miller* violation, was foreclosed by controlling case law. The parties do not raise any claim concerning the stipulation on appeal before this court.

[17] The petitioner acknowledges that he "initially argued that he was entitled to 848 days of presentence confinement credit on his controlling sentence." The petitioner asserts that he was denied the opportunity to present evidence and witnesses to the habeas court in support of his presentence confinement credit claim. The petitioner, however, never asked for an evidentiary hearing on his presentence confinement claim

time that elapsed between [his] arrest for murder and his sentencing."[18] The respondent counters that the court properly dismissed the petitioner's presentence confinement claim because his claim "is squarely controlled by *Harris*. The petitioner committed many different crimes on many different dates, which were prosecuted under different docket numbers." We agree with the respondent.

We begin by setting forth our standard of review and the following applicable legal principles. Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (2) the petition, or a

before the habeas court. The petitioner seeks review of this issue under the plain error doctrine set forth in Practice Book § 60-5 and pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

As we will explain, the petitioner's claim for presentence confinement credit, whether for 848 days or 1789 days, involves a question of law to which we afford plenary review, and, for the reasons stated in this opinion, we conclude that the petitioner's presentence confinement claim fails as a matter of law.

[18]The petitioner alternatively argues that, if this court should conclude that the present case "does not fit an exception, and therefore the presentence confinement time was not strictly earned in accordance with . . . § 18-98d, credit should nevertheless be applied under the circumstances." Our Supreme Court recently stated that trial courts have discretionary authority to apply specific presentence confinement credit in accordance with § 18-98d. See *State* v. *Hurdle*, 350 Conn. 770, 785, 326 A.3d 528 (2024). In the present case, however, there is no dispute that the trial court did not exercise its discretion to apply presentence confinement credit to his sentence, and count three of the amended petition does not challenge the trial court's failure to exercise such discretion. Rather, the petitioner alleged in count three only that "[his] substantive due process rights were violated by *the respondent's calculations* of the petitioner's jail credit." (Emphasis added.) Consequently, the fact that the trial court had discretion to award presentence confinement credit is not relevant to the petitioner's claim. Furthermore, to the extent the petitioner suggests that this court should itself apply the presentence confinement credits he is seeking, we decline his invitation. The petitioner did not cite to any authority that *this* court, as a reviewing court, has the authority to recalculate his presentence confinement credit and apply it to his controlling sentence.

count thereof, fails to state a claim upon which habeas corpus relief can be granted . . . .” “To obtain relief through a habeas petition, the petitioner must plead facts that, if proven, establish that the petitioner is entitled to relief. . . . When a petition fails to state a valid habeas claim, it is proper for the habeas court to dismiss the petition.” (Citation omitted; internal quotation marks omitted.) *Alston* v. *Commissioner of Correction*, 236 Conn. App. 568, 580, 349 A.3d 324 (2025), cert. denied, 354 Conn. 916, 351 A.3d 413 (2026).

“The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . In order to invoke the trial court’s subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty. . . .

“It is well settled that a petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action . . . . Practice Book § 23-29, which governs motions to dismiss habeas petitions, serves, roughly speaking, as the analog to Practice Book §§ 10-30 and 10-39, which, respectively, govern motions to dismiss and motions to strike in civil actions. . . .

“Whether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary. . . . We therefore must decide whether the court’s conclusions are legally and logically correct and supported by the facts in the record.” (Citations omitted; internal quotation marks omitted.) *Khan* v. *Commissioner of Correction*, 234 Conn. App. 851, 858–59, 344 A.3d 1234 (2025).

The petitioner claims that he is entitled to have 1789 days of presentence confinement credit applied to his controlling sentence, which represents the time that elapsed between his arrest for murder and his sentencing on that charge. “The principal statutory language at issue in this appeal is set forth in . . . § 18-98d (a) (1), which provides

in relevant part: 'Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided **(A)** *each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement*; and **(B)** the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . .' (Emphasis in original.) *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 818–19.

"If more than one sentence is imposed on a prisoner, the respondent calculates the incarceration period and discharge date by applying the provisions of General Statutes § 53a-38 (b), which provides in relevant part: 'Where a person is under more than one definite sentence, the sentences shall be calculated as follows: **(1)** If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . .' The merger concept embodied in this provision simply requires that the respondent compare the length of each sentence, after adjustment for its authorized credits, in order to ascertain which is the longest for the purpose of determining the prisoner's discharge date." Id., 819. "[W]hen concurrent sentences are imposed on different dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence. Hence, they cannot be counted a second time to accelerate the discharge date of any subsequent sentence without violating the language of § 18-98d (a) (1) (A)." Id., 823.

In *Harris*, our Supreme Court "refused to permit the transfer of presentence confinement credits to a later imposed sentence that was to run concurrently with an earlier sentence. . . . [T]he petitioner, Randy Harris, was arrested for various charges and held in presentence confinement for 780 days. . . . While in prison awaiting sentencing on these charges, Harris was charged with certain separate offenses. . . . His total presentence confinement for the later charges was 751 days, which overlapped with the presentence confinement time associated with the earlier charges. . . . When Harris was sentenced on the earlier charges, the respondent applied a presentence confinement credit of 780 days. . . . Harris subsequently received a sentence on the later charges that was to run concurrently with his earlier sentence. . . . The respondent did not apply any presentence confinement credit to his sentence for the later charges because that credit had already been used on the earlier charges and, according to the respondent, the use of the credit was barred by the plain language of § 18-98d (a) (1) (A). . . . Each sentence imposed was for a different incident, on a different date, and under a different docket number. . . .

"[Our Supreme Court] concluded that the respondent's method of calculating the presentence confinement credit was correct. . . . In doing so, [the court] distinguished [its] earlier ruling in *Payton* v. *Albert*, 209 Conn. 23, 547 A.2d 1 (1988), overruled in part on other grounds by *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 255 n.44, 756 A.2d 1264 (2000). . . . [Our Supreme Court] distinguished the circumstances where concurrent sentences were imposed on the same day such as in *Payton*, and the circumstances where the concurrent sentences were imposed on different days. . . . Particularly, [the court] observed that, when sentences are imposed on the same date, the credit had not been officially applied to any particular sentence and was unused. . . . The credit could then be applied to whichever sentence will result in the longest term of imprisonment pursuant to § 53a-38 (b). . . . [Our Supreme Court] reasoned that, where sentences are imposed on different days, the credit has

already been used on the earlier sentence and is no longer available for the later imposed sentence. . . .

"In doing so, [our Supreme Court] reasoned that [t]he merger process does not alter the fact that concurrent sentences remain separate terms of imprisonment which the legislature has permitted to be served at one time. . . . Therefore, [our Supreme Court] concluded that concurrent sentences imposed on different days must be treated separately for purposes of allocating presentence confinement credit." (Citations omitted; internal quotation marks omitted.) *James* v. *Commissioner of Correction*, 327 Conn. 24, 37–38, 170 A.3d 662 (2017).

In *James*, "[t]he petitioner was arrested and charged . . . with one count of robbery in the first degree in violation of General Statutes (Rev. to 1995) § 53a-134 (a) (2), two counts of assault in the first degree in violation of General Statutes (Rev. to 1995) § 53a-59, and one count of felony murder in violation of General Statutes (Rev. to 1995) § 53a-54c." (Footnote omitted.) Id., 27. The petitioner was held in lieu of bond on these charges, and, following trial, the jury returned a verdict of guilty on the charge of robbery in the first degree and the trial court declared a mistrial as to the remaining charges. Id. The petitioner was retried before a jury on the charge of felony murder, on which the jury returned a verdict of guilty. Id., 27–28. On appeal, our Supreme Court concluded that the petitioner in *James* was entitled to presentence confinement credit for his felony murder sentence. See id., 48. The court first reasoned that "§ 18-98d (a) (1) is subject to two reasonable interpretations" and is therefore ambiguous. Id., 32. "Specifically, it is not clear if merged concurrent sentences should be treated as one complete sentence, or if the two separate sentences have their respective credits applied and then merge. Under the first interpretation, if the two separate sentences are just one merged sentence, all credit accrued from the start of confinement would be applied to the entire merged sentence. . . . Under the second interpretation, if the sentences are two separate sentences which merge into one, then the respondent

must calculate the credit separately for each sentence and then determine the longer of the sentences, but because the credit was used for the first sentence, it would not be available when calculating the second sentence." Id. The court concluded that, "[o]n the basis of the language of § 18-98d, the legislative history surrounding its enactment, and its perceived intent in conjunction with the effect it has on the present case, we conclude that the statute requires the transfer of the petitioner's presentence confinement credit . . . to the later imposed sentence for felony murder." Id., 36–37.

In concluding that the petitioner in *James* was entitled to presentence confinement credit for his felony murder sentence, the court reasoned that *Harris* was distinguishable because, "[i]n *Harris*, the presentence confinement credit had been accruing at the same time for two completely separate charges that were prosecuted separately. . . . In the present case, however, presentence confinement credit was not accruing for two separate prosecutions but for one prosecution for felony murder that included the predicate lesser included offenses of robbery and assault. If the mistrial had not occurred, there would have been one credit applied to a total sentence for felony murder. Therefore, we conclude that the reasoning of *Harris* is inapplicable to the present case." (Citation omitted.) Id., 39–40. Our Supreme Court therefore concluded in *James* that § 18-98d required the transfer of credits from an earlier imposed sentence to a later one when the two sentences "merge into one effective sentence under one docket number," and that the respondent therefore should have applied presentence confinement credit to the petitioner's sentence for felony murder. Id., 40.

With these principles in mind, we turn to the petitioner's claim concerning count three of the operative petition. On appeal, the petitioner argues that the "unique procedural posture [of the present case] warranted application of the credit under the statute." Specifically, the petitioner asserts that his cases are all interrelated because they "[stem] from one course of

conduct and the actions taken thereafter" and because all of his cases "occurred in the same jurisdiction." The petitioner further states that, after the trial court ruled that the assault case must be tried separately, "[t]he state's attorney then made the decision to try the assault case first. The timing of the cases was completely outside the petitioner's control. Additionally, the fact that the jury deadlocked on the murder charge, among others, meant that the petitioner's sentencing for his controlling offense ultimately was delayed even longer than it should have been." According to the petitioner, these circumstances warrant application of the reasoning in *James* v. *Commissioner of Correction*, supra, 327 Conn. 24, to grant him presentence confinement credit on his controlling offense. We disagree.

In the present case, unlike in *James*, the petitioner was sentenced for multiple different offenses on multiple different docket numbers. These offenses arose from distinct incidents that occurred on different dates and thus did not stem from "one course of conduct and the actions taken thereafter," as the petitioner contends. The petitioner is thus similarly situated to the petitioner in *Harris*, in which "[e]ach sentence imposed was for a different incident, on a different date, and under a different docket number." *James* v. *Commissioner of Correction*, supra, 327 Conn. 37. As this court has explained previously, "[b]y its very terms . . . § 18-98d is directed at offsetting the length of a prison sentence by the period of presentence confinement. Credits are properly applied to reduce the number of days of sentenced confinement to reflect days spent in presentence confinement . . . . Once presentence confinement credit has been fully utilized to reduce a sentence, *it cannot be applied again to reduce another sentence*." (Emphasis added; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 204 Conn. App. 712, 723, 254 A.3d 1011, cert. denied, 338 Conn. 914, 259 A.3d 1179 (2021); see also, e.g., *Whitaker* v. *Commissioner of Correction*, 90 Conn. App. 460, 475–76, 878 A.2d 321 (concluding that, in light of *Harris*, respondent improperly applied

presentence confinement credit to later sentence after it had been credited against first sentence, in case where petitioner was sentenced to different terms of incarceration on different dates), cert. denied, 276 Conn. 918, 888 A.2d 89 (2005). Accordingly, the court correctly concluded that the respondent had properly calculated the amount of presentence confinement credit the petitioner was entitled to under § 18-98d.

The petitioner's arguments to the contrary are unpersuasive. The petitioner states that the "timing of his cases was completely outside [of his] control" because the trial court had ruled that the assault case should be tried separately from the remaining dockets. This, however, is different from the situation in *James*, in which the petitioner had his sentence delayed due to a mistrial. In the present case, the court ruled that the assault case should be tried separately because it arose from a distinct incident that stemmed from the petitioner's shooting of police officers seeking to apprehend him in 1999 and did not arise out of the same course of conduct as the burglary, which occurred in 1997, or the alleged murder of Labbadia in 1998. The charges in *James*, by contrast, clearly stemmed from a single course of conduct, namely, a robbery that resulted in the shooting of the victim, both of which occurred on February 26, 1995.[19] See *State* v.

[19]The petitioner also relies on *Boyd* v. *Lantz*, 487 F. Supp. 2d 3 (D. Conn. 2007), and *Johnson* v. *Commissioner of Correction*, Docket No. CV-19-4009871-S, 2021 WL 1792357 (Conn. Super. April 5, 2021), to support his claim that he is entitled to presentence confinement credit. The petitioner's reliance on these cases is misplaced.

The petitioner in *Boyd* was charged with the crimes of felony murder, burglary in the first degree, larceny in the third degree, and larceny in the first degree. *State* v. *Boyd*, 214 Conn. 132, 133, 570 A.2d 1125 (1990). "All of the charges stemmed from the murder of [the victim] during the burglary of her home in New Canaan . . . ." Id., 133–34. The petitioner was convicted of all of the charges except larceny in the first degree. Id., 134. On appeal, our Supreme Court reversed the judgment of conviction for felony murder and remanded the case for further proceedings. See id., 142. The petitioner was prosecuted again for felony murder and ultimately convicted. *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 13. The United States District Court for the District of Connecticut held that the petitioner was entitled to confinement credit for the time

*James*, 247 Conn. 662, 666–67, 725 A.2d 662 (1999). Thus, although it is true that the trial court's order that the cases be tried separately was not in the petitioner's "control," that fact does not alter our analysis in the present case.

We also reject the petitioner's argument that the present case is akin to *James* v. *Commissioner of Correction*, supra, 327 Conn. 24, because "the fact that the jury deadlocked on the murder charge, among others, meant that the petitioner's sentencing for his controlling offense ultimately was delayed even longer than it should have been." In *James*, our Supreme Court stated that, had there not been a mistrial, the petitioner would have been sentenced on all charges at the same time. *James* v. *Commissioner of Correction*, supra, 40. By contrast, in the present case, even if there had not been a mistrial on the murder charge, the petitioner still would have been subject to two different sentences in light of the

between when his felony murder conviction was vacated and when he finished serving his sentence for burglary. Id. The court determined that the deprivation of his confinement credit unconstitutionally burdened his right to bring a preconviction double jeopardy challenge of his reprosecution. Unlike in *Boyd*, the petitioner in the present case is serving sentences for convictions arising from several different courses of conduct. Furthermore, the petitioner's claim does not implicate his rights to pursue an interlocutory appeal, as was the case in *Boyd*.

Likewise, the present case is distinguishable from *Johnson*. In *Johnson*, a nonbinding Superior Court decision, the petitioner was charged under one docket number with murder and criminal possession of a firearm. *Johnson* v. *Commissioner of Correction*, supra, 2021 WL 1792357, *1. The petitioner pleaded guilty to criminal possession of a firearm, for which he was sentenced to five years of incarceration, and proceeded to trial on the murder charge. Id. The petitioner was found guilty of murder, and the respondent did not apply presentence confinement credit to the murder sentence. Id. The petitioner filed a petition for a writ of habeas corpus, which the court granted, relying on *James* v. *Commissioner of Correction*, 327 Conn. 24. See *Johnson* v. *Commissioner of Correction*, supra, *6–7. Specifically, the court determined that "there was one incident that resulted in multiple charges, all of which were prosecuted at the same time, under the same docket number, in the same jurisdiction." Id., *6. In contrast to the petitioner in *Johnson*, the petitioner in the present case is serving sentences for convictions arising from different incidents on different docket numbers and on different dates.

trial court's decision not to join the assault case with the other cases.

Furthermore, the court in *James* v. *Commissioner of Correction*, supra, 327 Conn. 24, did not rely solely on the existence of a mistrial in holding that the petitioner in that case was entitled to presentence confinement credit on his felony murder sentence. Rather, in *James*, the earlier robbery was the predicate to the petitioner's conviction of felony murder. See id., 39. Moreover, the earlier imposed sentences derived from the same docket number as the later imposed sentences. See id. In the present case, none of the charges in the assault or the tampering cases was a predicate offense for the charges in the murder, the burglary, or the escape cases, and each case had a different docket number. Whereas the sentences at issue in *James* all arose from a single prosecution that included predicate lesser included offenses; see id., 40; the sentences for which the petitioner is serving in the present case arose from distinct offenses. Therefore, *James* is inapplicable and *Harris* controls. Accordingly, the court properly determined that the operative petition failed to state a claim for which it could grant habeas relief to the petitioner and, thus, we conclude that the court properly dismissed the third count of the operative petition.

The judgment is affirmed.

In this opinion the other judges concurred.